UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>NATHANIEL L. HOLMES,<br><br>　　　　　　*Defendant*. | Case No. 1:21-cr-00416-RDM-2 |

**NATHANIEL L. HOLME'S MOTION, PURSUANT TO 18 U.S.C. § 3145(b)
FOR REVOCATION OF HIS PRETRAIL DETENTION**

On June 23, 2021, Magistrate Judge Zia M. Faruqui ordered Mr. Holmes detained before trial. Mr. Holmes now respectfully moves this Court, pursuant to 18 U.S.C. § 3145(b), for revocation of that detention order.[1] For the reasons discussed below, pretrial detention is not the least restrictive measure necessary to reasonably assure community safety. Instead, release under a comprehensive set of restrictive conditions is sufficient to meet that goal.[2] Accordingly, the Magistrate Judge's detention order should be revoked in favor of that alternative.

**ARGUMENT**
**THE DETENTION ORDER SHOULD BE REVOKED BECAUSE THE GOVERNMENT FAILS TO MEET ITS BURDEN OF PROVING, BY CLEAR AND CONVINCING EVIDENCE, THAT NO CONDITIONS SHORT OF PRETRIAL DETENTION CAN REASONABLY ENSURE PERSON AND COMMUNITY SAFETY**

"In our society liberty is the norm, and detention prior to trial or without trial is the

---

[1] 18 U.S.C. § 3145(b) provides: "Review of a detention order. If a person is ordered detained by a magistrate, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly."

[2] As set forth in Point E below, D.C.'s Pretrial Services Agency has fashioned a comprehensive program of electronic monitoring, supervision, and intensive case management for higher risk defendants – the High Intensity Supervision Program ("HISP") – that, together with any other condition the Court sees fit to impose, will reasonably assure person and community safety without pretrial detention.

1

carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987); *United States v. Munchel*, 991 F.3d 1273, 1279 (D.C. Cir. 2021) (same); *United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) ("Detention until trial is relatively difficult to impose."). As a general rule, courts should refuse to release defendants on bail "[o]nly in rare circumstances," and "only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) (Kennedy, J.). Any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Id.* at 1405.

Consistent with these principles, the presumption of innocence afforded to every defendant, and the Eighth Amendment prohibition against excessive bail, the Bail Reform Act of 1984 provides that a defendant should be released pending trial on personal recognizance or "subject to the least restrictive further conditions, or combination of conditions that . . . will reasonably assure [1] the appearance of the person as required and [2] the safety of any other person and the community." 18 U.S.C. § 3142(b) and (c)(1)(B). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 540 (D.C. Cir. 2019).

Here, the government concedes that Mr. Holmes – who has lived his entire life in D.C. and has strong family ties here[3] – is not a flight risk. Indeed, the government neither alleged nor adduced any evidence showing that Mr. Holmes poses such a risk. *See* June 23, 2021 Arraignment/Detention Hearing Transcript ("Tr.") at 1-50. Consistent with this concession, Magistrate Judge Faruqui did not find Mr. Holmes to be a flight risk. *See id.* 41:5-10. Rather, the Magistrate ordered pretrial detention on the sole ground that Mr. Holmes posed a danger requiring

---

[3] Several of Mr. Holmes's family members attended his June 23, 2021 Arraignment/Detention Hearing. *See* Tr. 3:11-19. These same family members also have offered to be third-party custodians. *Id.*

2

preventative detention. Tr. 41:11-23. As discussed below, the Magistrate Judge's determination is incorrect as a matter of fact and law. Thus, the Court should revoke the detention order and impose stringent release conditions upon Mr. Holmes instead.

### A. The Legal Standard for Dangerousness

The government bears the heavy burden of proving dangerousness by clear and convincing evidence. *Munchel*, 991 F.3d at 1280.[4] Under the Bail Reform Act, the Court must apply the following four factors in considering whether the government has shown, by clear and convincing evidence, that no alternative exists but to have Mr. Holmes jailed before trial. They are: 1) the nature and circumstances of the offense charged; 2) the weight of the evidence against Mr. Holmes; 3) Mr. Holmes's history and characteristics; and 4) the nature and seriousness of the danger posed by Mr. Holmes to any person or the community if he is released. *See* 18 U.S.C. 3142 (g)(1)-(4); *Munchel*, 991 F.3d at 1279.

The Court applies a *de novo* standard of review to the Magistrate Judge's order below. *See United States v. Hubbard*, 962 F.Supp.2d 212, 215 (D.D.C. 2013) (citing *United States v. Sheffield*, 799 F.Supp.2d 18, 19-20 (D.D.C. 2011)); *see also United States v. Koenig*, 912 F.2d 1190, 1192-1193 (9th Cir. 1992) (in reviewing magistrate's detention order, a district court "should review the

---

[4] In some cases, 18 U.S.C. § 3142(e) applies a rebuttable presumption that a defendant must be detained to ensure community safety. That rebuttable presumption does not apply here, and the government does not contend that it does. *See* Tr. 10:10-24; 11:22-12:20. In any event, a defendant only bears a limited burden of production – not a burden of persuasion – to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight. *See, e.g., United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985); *United States v. Dabney*, 2020 U.S. Dist. LEXIS 67127, *2 (D.D.C. 2020) (finding presumption rebutted). And "[e]ven in a presumption case, the government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001).

evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference").

Applying these legal standards, the government failed to meet its clear and convincing burden of proving Mr. Holmes must be detained.

### B. The Nature and Circumstances of the Charged Offense and the Weight of the Evidence Support Mr. Holmes's Release with Appropriate Restrictions

Mr. Holmes has been indicted on one charge of kidnapping and one charge of first-degree sexual assault. *See* Indictment [ECF Docket No. 17]. While these are terrible offenses, Mr. Holmes remains entitled to the presumption of innocence. Further, the "very reason that Congress directed district courts to consider factors beyond just the severity of the offense is the recognition that an individual is more than the crime of which that individual has been accused." *United States v. Mattis*, 963 F.3d 285, 293 (2d Cir. 2020).

This case concerns the alleged kidnapping and sexual assault of complainant T.L. In considering the matter, it is important to differentiate between Mr. Holmes's alleged actions and the alleged actions of his co-defendants. Unlike his co-defendants, Mr. Holmes did not respond to the Instagram invite posted by T.L., along with live video of T.L. "smoking marijuana and holding the guns given to her by "'Dirty.'" Compl. at 3. Unlike his co-defendants, Mr. Holmes did not approach T.L. at the vigil for her boyfriend who had left her the guns and cocaine, and it was not Mr. Holmes who took her number and called her asking for the guns. *Id.* At no time did Mr. Holmes possess a gun (Compl. at 5-6) and it was not Mr. Holmes who threatened to kill T.L. "if the guns do not show up in two to three days." *Id.* Nor did Mr. Holmes hit T. L. *Id.* Even under the allegations of the complaint, it is Mr. Holmes who cleaned the blood off T.L.'s face after she was beaten by others. *Id.*

4

Although T. L. alleges that she was forced to have sex with Mr. Holmes, this is an archetypal "he said/she said" situation. In this regard, T.L. already has made several significant inconsistent statements that substantially damage her credibility and believability, and has taken actions that do not accord with the instant charges. In this regard:

- In her first statement to law enforcement after her mother involved the police, T.L. said she could not identify who had allegedly assaulted her and that they were wearing ski masks and gloves. Later, she completely changed her story to one where she knew each of the defendants and they were not wearing masks or gloves.

- T.L. said in more than one interview that the door to her apartment had been kicked in to begin the assault. Later, she completely changed her story to say that she had opened her door to Witness 1 and her assailants pushed themselves into the apartment once the door was open. (Witness 1 was not even part of T.L.'s story until the day after the alleged assault, after several interviews already had taken place.)

- T.L. originally stated that she had not seen anyone with a gun. Later, she completely changed her story to having one of the assailants pointing a gun at her dog, and also claimed she had been hit in the head with a gun.

- T.L. originally could not remember being sexually assaulted.

- T.L. originally claimed that she regained consciousness from the beating, locked the front door, tried to take a shower, passed out on the bathroom floor, then regained consciousness and called a family member. (The family member apparently called T.L.'s mother who called the police.) Entirely missing from that version of events is the trip to Maryland (forming the basis of the kidnapping charge) and the alleged non-consensual sex (forming the basis of the sexual assault charge).

- While T.L. told the authorities of her call to the family member, T.L. never mentioned the almost 20 calls she made to Mr. Holmes where she told him what food to get her from McDonalds, allegedly after being raped and sodomized by him.

As the magistrate summarized: it is "very clear that not once but multiple times … [the complainant] has lied here. There is no doubt about that." Tr. 43:24-44:2. These "very clear" inconsistencies and contradictions take on greater weight given that there are no other witnesses to the alleged sexual assault of T.L. by Mr. Holmes. This case, therefore, is far from those cases where the weight of evidence is so overwhelmingly against the defendant that it reasonably can be

5

assumed that he or she faces an inevitable conviction. *Cf. United States v. Jackson*, 823 F.2d 4, 6 (2d Cir. 1987) (overwhelming evidence from nine different confidential sources to support allegations, including first-hand testimony of defendant's involvement in heroin deals); *United States v. Duncan*, 897 F. Supp. 688, 692 (N.D.N.Y. 1995) (five confidential informants willing to testify that defendant supplied, received, packaged, prepared, and sold cocaine in various forms for at least two years). Mr. Holmes has every reason to defend himself against the charged offense and, as part of that, has every reason to abide by the conditions of his release so he can remain free and better able to help prepare his defense.

### C. Mr. Holmes's History and Characteristics Supports Mr. Holmes's Release with Appropriate Restrictions

The Magistrate Judge expressly found that Mr. Holmes's history and characteristics "weighs in favor of release." The magistrate stated:

> I think history and characteristics weighs in favor of release. … This is an old charge. It's a carrying a pistol without a license, and there's no indication that there was really any attendant violence or anything related to that. Mr. Holmes, successfully, was able to get through supervision. And so I don't believe that anything else of his history and characteristics demonstrated that until what appears to be this recent incident, that he was progressing in the right direction and that he should be credited for success -- successfully completing his supervision.

Tr. 48:6-16 (Magistrate Judge). The Magistrate Judge's finding in this regard is correct and supports revocation of the detention order.

### D. The Lack of Danger to Either the Alleged Victim or the General Community Supports Mr. Holmes's Release with Appropriate Restrictions

The government cannot meet its heavy burden of proof by simply alleging that a defendant is a dangerous person or pointing to past conduct. For pretrial detention to be consistent with the Due Process Clause, the government must prove "by clear and convincing evidence that an arrestee *presents an identified and articulable threat* to an individual or the community" and that pretrial detention is necessary to "disable the arrestee *from executing that threat.*" *Munchel*, 991 F.3d at

1280 (emphases in original) (quoting *Salerno*, 481 U.S. at 751)). Here, pretrial detention is not necessary to "disable" Mr. Holmes from carrying out any "identified and articulable threat" to either a specific person or the larger community.

As to danger to an individual, the Magistrate Judge identified only one such individual -- T.L. Tr. 47:1-2; 49:1-2. However, the government points to no specific threat – verbal or physical – made by Mr. Holmes to T.L. in the seven weeks between the alleged offense and his arrest, or since. In other words, the government has not shown an "identified and articulable threat" to her by Mr. Holmes. All the magistrate could point to regarding T.L. was a broad and inchoate concern that, because "the case is charged and the defendant is aware," there now was a "more acute" risk to T.L. Tr. at 49:15-17. Respectfully, this reasoning is applicable to every case (no doubt numbering in the tens of thousands each year) where the identity of the complainant is known to the defendant and is precisely the type of reason why the U.S. Supreme Court and the D.C. Circuit require more – *viz*, an "identified and articulable threat" – before pretrial detention can be said to accord with Due Process. *See Salerno*, 481 U.S. at 751; *Munchel*, 991 F.3d at 1280.

Not only is there no identified and articulable threat here, but pretrial detention is not needed to "disable" Mr. Holmes from executing any purported threat. *See Salerno*, 481 U.S. at 751; *Munchel*, 991 F.3d at 1280. Specifically, the government has moved T.L. to an undisclosed and protected location unknown to Mr. Holmes. According to the government, T.L. is no longer living at the same address and is no longer using the same telephone number or social media outlets. Thus, even assuming for the sake of argument that a future threat existed from Mr. Holmes to T.L. (and there is no evidence of that), Mr. Holmes already has been reasonably disabled from executing that threat by the government moving T.L., which means pretrial detention is not needed to protect T.L. Indeed, should any concern remain, the Court readily can impose, as a release

condition, that Mr. Holmes have no further direct or indirect contract of any kind, including by phone, text, or social media, with T.L. or any member of her family. Should the government not be confident in the safe housing of T.L., they could obtain a protective order from Superior Court.

As to the safety of the community, the Magistrate Judge speculated that someone might hear about what happened with Mr. Holmes and go to his house and arrange a gun sale. Tr. 49:19-50:11. Respectfully, this unsupported speculation by the Magistrate Judge does not comprise clear and convincing proof of community danger. Among other things, this entirely fictional scenario does not account for (i) the other members of the household, who would have to become participants and accessories to the hypothetic crime posited by the magistrate;[5] (ii) Mr. Holmes's abiding interest in maintaining a clean record and not jeopardizing his released status; and (iii) Mr. Holmes's history and characteristics.

As the Magistrate Judge recognized, Mr. Holmes had completed his probation early on a single prior non-violent crime and that "until what appears to be this recent incident, he [Mr. Holmes] was progressing in the right direction." Tr. 48:6-16 (Magistrate Judge). Moreover, Mr. Holmes already has shown his ability and commitment to abiding by any conditions of release imposed upon him. *See* Tr. 25:22-26:3 (referencing pretrial services report acknowledging Mr. Holmes's early release from prior probation because of good conduct). This proof that Mr. Holmes can and will abide by the conditions imposed upon him as part of his release not only squarely contradicts the magistrate's speculative concern regarding potential community danger, it strongly

---

[5] Upon release, Mr. Holmes anticipates living with his girlfriend Anna Phan, who just gave birth to their child. She does not work and will not be working for the foreseeable future as she takes care of their infant son. Accordingly, Mr. Holmes will not be in the house alone and unsupervised for any significant time. As stated in Ms. Phan's letter (attached hereto as **Exhibit A**), she is committed to making sure Mr. Holmes abides by all release conditions, as part of building a happy and law-abiding life with him.

8

supports releasing him from detention. *See Munchel*, 991 F.2d at 1280-1281 (finding "a defendant's potential for compliance with release conditions relevant to the detention inquiry").

Plainly, the magistrate's "finding" regarding community danger should be given no weight, and certainly not clear and convincing weight. Among other things, it does not comport with the instruction that pretrial detention should happen "[o]nly in rare circumstances;" "only for the strongest of reasons;" and that any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Motamedi*, 767 F.2d at 1405-1406. Any genuine risk to the general community can reasonably be addressed by release conditions short of detention, which can include, among other things, home confinement, electronic monitoring, and consistent and frequent in-person supervision by Pretrial Services. *See* Argument, Point E (discussing the HISP program). The government has not shown otherwise by clear and convincing evidence.

In sum, the government has failed to point to any clear and convincing threat posed by Mr. Holmes that can only be prevented by pretrial detention. To the contrary, the facts – including the government moving T.L. to an undisclosed location and Mr. Holmes's demonstrated compliance with release conditions – show there is no such threat, and that the range of protective measures available to the Court and Pretrial Services short of detention is sufficient to reasonably assure the safety of T.L. and the wider community. Given this, the detention order should be revoked.

### E. Pretrial Services' HISP Program Will Reasonably Assure the Safety of Any Other Person and the Community, Supporting Mr. Holmes Release Under the HISP Program

As part of its *de novo* review of the magistrate judge's detention order this Court is required "promptly to examine *de novo* whether there are conditions of release that will reasonably assure the safety of any other person and the community." *Hubbard*, 962 F.Supp.2d at 215 (internal citations omitted). Here, Pretrial Services' High Intensity Supervision Program ("HISP") will

reasonably assure the safety of the community, rendering Mr. Holmes's pretrial detention inappropriate under the Bail Reform Act. *See, e.g., United States v. Dabney*, 2020 U.S. Dist. LEXIS 67127, *10-13 (D.D.C. 2020) (changing pretrial detention to release under Pretrial Services Agency's High Intensity Supervision Program, with electronic monitoring, condition of permanent home confinement, and all the other "rules, regulations, and requirements of the [HISP] Program that are listed in the orientation contract, which is incorporated herein by reference"). Indeed, on June 23, 2021, one of Mr. Holmes's co-defendants, Donaesha Hawkins, was placed into the HISP program.

HISP is a comprehensive program of electronic monitoring, supervision, and intensive case management for higher risk defendants. Https://www.psa.gov/sites/default/files/Brochure%20-%20HISP%207.7.17%20-%20Ready%20for%20Print.pdf. Under HISP, Pretrial Services provides increased monitoring and a variety of other measures "to promote compliance with supervision conditions," including (i) *weekly* in-person contact with a Pretrial Services Officer; (ii) at least weekly drug testing; (iii) electronic location monitoring; (iv) home confinement or curfew; and (v) weekly reports to the Court on program compliance. *Id.* In addition to the HISP program, Mr. Holmes does not object to the Court imposing additional restrictions as it sees fit, including but not limited to a specific requirement that Mr. Holmes have no physical, electronic, or social media contact with T.L. or any member of her family while on release. Finally, it is important to note that Mr. Holmes has taken the first steps to secure employment (**Exhibit B**) and that too bodes well for him and his ability and desire to comply with the conditions of his release. It shows that despite his prior criminal history, he is motivated to work and make a better life for himself and his young family.

All these targeted restrictions are sufficient to reasonably ensure the protection of T.L. and the general community, making Mr. Holmes's pretrial detention improper under the Bail Reform

10

Act. Instead, he should be released into the HISP program and be placed under home confinement, with 24/7 electronic monitoring and weekly in-person supervision by Pretrial Services, at the home of his girlfriend, Anna Phan, and their newly born infant son. This is the same location where Mr. Holmes was staying – without incident – in the weeks between the alleged offense and his subsequent arrest and detention.

## CONCLUSION

For the foregoing reasons, the Court should (i) revoke the detention order imposed on Mr. Holmes; (ii) order Mr. Holmes placed in the HISP program with all appropriate conditions; and (iii) grant Mr. Holmes such other and further relief as the Court deems just and proper.

Dated: July 14, 2021                                   Respectfully Submitted,

                                                       A.J. KRAMER
                                                       FEDERAL PUBLIC DEFENDER

                                                         /s/ Sabrina P. Shroff

                                                       Sabrina P. Shroff
                                                       Assistant Federal Public Defender
                                                       625 Indiana Avenue, N.W., Suite 550
                                                       Washington, D.C. 20004
                                                       (202) 208-7500